**IN THE UNITED STATES COURT
FOR THE DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - -x

DISTRICT OF COLUMBIA <u>ex</u> <u>rel</u>            :
                                                  :
KENNETH WALKER,                                   :
1301 Belmont Street, N.W., #7                     :
Washington, DC 20009                              :
                                                  :
BRINGING THIS ACTION ON                           :
BEHALF OF THE DISTRICT                            :
OF COLUMBIA                                       :
                                                  :
                                                  :        Civil Action No.
c/o Robert J. Spagnoletti                         :
Attorney General, DC                              :
1350 Pennsylvania Avenue, N.W.                    :
Washington, D.C. 20004                            :
                                                  :
                                    Plaintiffs,   :
                                                  :
                        V.                        :
                                                  :
MERCK & COMPANY,                                  :
619 One Merck Drive                               :
Whitehouse Station, NJ 08889                      :
                                                  :
                                    Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - -x

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that Defendant Merck & Co., Inc. ("Merck"), through

undersigned counsel, hereby removes the above-captioned action from the Superior Court of the

District of Columbia, to the United States District Court for the District of Columbia, pursuant to

28 U.S.C. §§ 1331, 1332, 1441, 1446 and 1453. In support of its removal, Merck respectfully

states as follows:

1.      This action involves allegations regarding the prescription drug Vioxx®. An

MDL proceeding, *In re Vioxx Marketing, Sales Practices and Products Liability Litigation*,

MDL No. 1657, has been established in the United States District Court for the Eastern District

of Louisiana (Fallon, J.) for coordinated pretrial proceedings of Vioxx-related actions pursuant to

28 U.S.C. § 1407. That MDL proceeding includes ten other suits like this one alleging that state

Medicaid funds were improperly spent on Vioxx prescriptions due to Merck's alleged fraudulent

representations about the drug. It also includes numerous putative class actions alleging Vioxx-

related claims under various states' consumer protection statutes.

2.      As set forth more fully below, this case is properly removed to this Court pursuant

to 28 U.S.C. §§ 1441, 1446 and 1453 because Merck has satisfied the procedural requirements

for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1332.

## I.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

3.      On August 4, 2005, Kenneth Walker commenced this action against Merck in the

Superior Court of the District of Columbia, captioned *District of Columbia ex rel. Kenneth*

*Walker v. Merck & Co., Inc.*, No. 2005 CABSLD 006143. A true and correct copy of plaintiff's

Amended Complaint ("Am. Compl.") is attached as Exhibit A. Plaintiff's case was filed under

seal pending an investigation by the Attorney General of the District of Columbia to determine

whether to intervene. On September 27, 2007, the District of Columbia filed a Notice of

Election to Decline Intervention. On February 29, 2008, plaintiff was directed to file an

Amended Complaint, and an order unsealing the case was signed on April 3, 2008. Merck was

served with a copy of the Amended Complaint on June 16, 2008, less than thirty days ago.

Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 88, because it is the "district

and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

5.      No previous application has been made for the relief requested herein.

6.      Merck will promptly (a) file a true and correct copy of this Notice of Removal with the Clerk of Court for the Superior Court of the District of Columbia in accordance with 28 U.S.C. § 1446(d); and (b) serve plaintiff's counsel with a true and correct copy of this Notice of Removal, in accordance with 28 U.S.C. § 1446(d).

## II.     REMOVAL IS PROPER BECAUSE THIS COURT HAS FEDERAL QUESTION JURISDICTION OVER THIS MATTER.

7.      Plaintiff's Amended Complaint alleges that Merck "was aware of significant cardiovascular risks associated with the use of Vioxx and yet, in an aggressive and intentional sales blitz, obfuscated the risks and encouraged physicians and medical providers to prescribe Vioxx." Am. Comp. ¶ 29.  It also alleges that Merck has "provided medical providers in the District of Columbia with misleading and unscientific studies that served as the basis for the physicians to prescribe Vioxx and to fill out authorizing forms for DC Medicaid patients, like Mr. Walker, to obtain Vioxx over available generic drugs." *Id.* ¶ 40.  Plaintiff further alleges that Merck "committed unlawful trade practices in connection with marketing and selling Vioxx to consumers in the District of Columbia in violation of D.C. Code Section 28-3904(e) and (f)." *Id.* ¶ 10.  Based on these allegations, plaintiff seeks "consequential and statutory damages" along with "compensatory damages, punitive damages, and attorney's fees" under D.C. Code §§ 2-308.14(a) and 28-3905(k)(1). *Id.* ¶¶ 50, 59.

8.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because plaintiff's claims directly implicate two areas of federal law:  federal Medicaid law, which determines both which drugs a state must cover under its Medicaid program and the limited circumstances under which it can decline to pay for such drugs, *see* 42 U.S.C. §§ 1396r-8(d)(l)(B), (d)(4); and the federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et*

*seq.*, which regulates prescription drug manufacturers' public and promotional statements about prescription drugs. Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

9.      The Supreme Court has recognized that federal question jurisdiction exists over claims that are asserted under state law if the state law claims implicate substantial federal questions. *Grable & Sons Metal Prods., Inc. v. Dante Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005); *Hopkins v. Walker*, 244 U.S. 486, 489-91 (1917); *see also County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005).

10.     As the Supreme Court explained in *Grable*, the test for whether a federal court should hear a case under this doctrine is not whether the federal statute provides a parallel private right of action, but whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. In *Grable*, the Supreme Court concluded that federal question jurisdiction existed because the plaintiff's state law claim was premised on the failure of a government agency to fulfill its responsibilities as defined by federal law. Accordingly, the interpretation of federal law was essential to resolving the state law claim. *Id.* at 314-15. The same is true here.

11.     ***First***, plaintiff's claim for statutory penalties based on monies spent by the District of Columbia on Vioxx necessarily implicates federal laws and regulations related to Medicaid because it depends on the interpretation and application of federal statutory provisions that govern what can be included in or rejected from state Medicaid formularies, including the District's. In addition, federal funds comprise more than half of the funds at issue in this lawsuit,

*i.e.*, money spent for Vioxx under the District of Columbia Medicaid Program.[1] *See* Am. Compl.

¶¶ 41, 49.

12.    The federal Medicaid program authorizes federal money grants to states to

provide medical assistance to low-income individuals. *See* 42 U.S.C. § 1396 *et seq.*; 42 C.F.R.

§ 430.10 *et seq.*[2] "Although participation in the program is voluntary, participating States must

comply with certain requirements imposed by the [Medicaid] Act and regulations promulgated

by the Secretary of Health and Human Services." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502

(1990). *See also Westside Mothers v. Haveman*, 289 F.3d 852, 858 (6th Cir. 2002) ("[T]he

conditions imposed by the federal government pursuant to statute upon states participating in

Medicaid and similar programs are not merely contract provisions; they are federal laws."). In

the District of Columbia, the Medicaid program is administered by the Medical Assistance

Administration in the Department of Health, which is required under federal law, 42 U.S.C.

§ 1396a, to submit a Medicaid plan which attests to the District's compliance with federal

statutes and regulations. *See* 42 C.F.R. § 430.10 ("The State plan is a comprehensive written

statement submitted by the [state Medicaid] agency . . . giving assurance that it will be

administered in conformity with the specific requirements of title XIX, the regulations in this

Chapter IV, and other applicable official issuances . . . ."). Moreover, federal law mandates both

the eligibility requirements for recipients of medical assistance and the types of medical services

that must be provided if a state chooses to administer a Medicaid program. 42 U.S.C. § 1396d.

*See also Coe v. Hooker*, 406 F. Supp. 1072, 1079 (D.N.H. 1976) (under the Medicaid program,

---

[1]    For fiscal year 2004 (October 1, 2003 to September 30, 2004), for example, federal funds accounted for 70% of the District's Medicaid financing. *See Federal Financial Participation in State Assistance Expenditures; Federal Matching Shares for Medicaid, the State Children's Health Insurance Program, and Aid to Needy Aged, Blind, or Disabled Persons for October 1, 2003 through September 30, 2004*, 67 Fed. Reg. 69,223, 69,224 (Nov. 15, 2002).

[2]    By statute, Congress authorized the District of Columbia to participate in the Medicaid program, even though it is not a state. Act of Dec. 27, 1967, P.L. 90-227, § 1, 81 Stat. 744.

the federal government "will share with the states the cost of any medical service offered in the state program[s] so long as the service comes within any of the seventeen enumerated categories of medical care" in § 1396d).

13.    Significantly, federal law tightly constrains the circumstances under which states may decline to reimburse FDA-approved prescription drugs of any manufacturer that has entered into and complies with a rebate agreement with the Secretary of Health and Human Services, as Merck did while Vioxx was on the market. 42 U.S.C. § 1396r-8.

14.    Under the federal Medicaid regime, a state may only exclude an on-label prescription from Medicaid coverage in three circumstances. First, a state may exclude statutorily specified categories of drugs (such as barbiturates) and treatments (such as smoking cessation). *See* § 1396r-8(d)(1)(B)(ii) & (d)(2). Second, if it has the approval of the Secretary of Health and Human Services, a state may execute a special rebate agreement with the manufacturer specifically restricting coverage of the prescription. *See* § 1396r-8(d)(1)(B)(iii). Third, a state may develop an exclusive formulary, under which a state board established pursuant to federal requirements may exclude specific uses of specific drugs from coverage if it makes required findings based entirely on the labeling approved by the FDA. *See* § 1396r-8(d)(1)(B)(iv) & (d)(4). But even where a state creates an exclusive formulary, it must "permit[] coverage of a drug excluded from the formulary . . . pursuant to a prior authorization program" that meets certain procedural requirements. *See* § 1396r-8(d)(4)(D).

15.    On-label Vioxx prescriptions would not have fit into any of the excludable categories listed in § 1396r-8(d)(2), and the District of Columbia had neither an agreement concerning Vioxx prescriptions under § 1396r-8(d)(1) nor an exclusive formulary under § 1396r-

8(d)(4) while Vioxx was on the market. Accordingly, federal law prohibited the District of Columbia from excluding Vioxx from coverage.

16.     At most, the District could have required doctors to obtain "prior authorization" for Vioxx prescriptions, *see* § 1396r-8(d)(1)(A), if it established a prior authorization program that complied with federally mandated procedural requirements, *see* § 1396r-8(d)(5). But such a program could only have established a procedural hurdle; a state may not deny prior authorization, unless it has created an exclusive formulary. *See Edmunds v. Levine*, 417 F. Supp. 2d 1323 (S.D. Fla. 2006) (explaining that, under prior authorization provision in § 1396r-8(d)(1), "the state can require a prescribing doctor to seek approval of a particular drug as a condition of Medicaid coverage," but "the doctor retains the authority to override any suggestions made by" state pharmacists). And because the District did not establish an exclusive formulary, it had to cover all on-label Vioxx prescriptions.

17.     Other courts have recognized that claims like those here, which implicate federal Medicaid drug pricing, are removable to federal court under *Grable*.

18.     In *In re Zyprexa Products Liability Litigation*, 375 F. Supp. 2d 170 (E.D.N.Y. 2005), for example, the court relied on *Grable* in asserting federal question jurisdiction over state-law claims involving a manufacturer's marketing of a prescription drug and the state of Louisiana's payments for that drug under Medicaid. The core allegation in *Zyprexa* was that the manufacturer of the prescription drug Zyprexa marketed the drug for off-label or non-FDA-approved uses, which caused the Louisiana Department of Health and Hospitals to disburse wrongfully millions of dollars in Medicaid funds to pay for Zyprexa prescriptions and to pay for the resulting Zyprexa-related injuries. *Id.* The MDL court applied *Grable* and retained federal jurisdiction because of the "substantial federal funding provisions involved" and because

allegations that the manufacturer had improperly marketed Zyprexa for non-FDA-approved uses rendered the case "federally oriented." *Id.* at 172-73. *See also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. LEXIS 10355, at *3 (E.D.N.Y. Feb. 12, 2008) (asserting federal question jurisdiction over state-law claims brought by Montana's attorney general because "[t]he resolution of Montana's claims necessarily depend[s] on decisive federal questions, including the state's claims based upon its participation in the federal Medicaid program, the requirements of which are governed by federal law").

19.    Similarly, the court in *County of Santa Clara* held that federal jurisdiction was proper under *Grable* because the plaintiff's state law claims against pharmaceutical manufacturers for allegedly overcharging the plaintiff for Medicaid drugs presented substantial questions of federal law. 401 F. Supp. 2d at 1031. In concluding that the Medicaid drug pricing issues merited federal jurisdiction, the court observed that one measure of evaluating substantiality is "the importance of the federal issue," and noted that "[u]nder this approach, the following issues have been found to be substantial: those that directly affect the functioning of the federal government, those in an area reserved for exclusive federal jurisdiction, and those that impact a complex federal regulatory scheme." *Id.* at 1027.

20.    The same is true here. As explained above, every step a state takes with regard to coverage of FDA-approved drugs under Medicaid is subject to strict federal mandates. And because the District of Columbia's Medicaid program operates within this overarching federal statutory and regulatory framework, plaintiff's claims alleging that Merck's conduct concerning Vioxx caused the District to spend money on Vioxx necessarily turn on substantial questions of federal Medicaid law. For this reason alone, federal jurisdiction exists over plaintiff's claims.

21.    *Second*, the claims in this case are also implicitly and explicitly premised upon alleged violations of the federal Food, Drug & Cosmetic Act, specifically, that Merck illegally promoted an unsafe drug for public use and failed to warn doctors and regulators of risks in violation of FDCA rules and regulations.

22.    Under the FDCA, the FDA is tasked with approving drugs for human use and determining the necessary warning manufacturers must include with their products. 21 U.S.C. § 393(b). The FDCA charges the FDA to ensure that "drugs are safe and effective" for their intended uses, *id.* § 393(b)(2)(B), in part by "promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products." *Id.* § 393(b)(l). The FDA is vested with the authority to promulgate regulations to enforce the FDCA, which are codified in the Code of Federal Regulations, 21 C.F.R. § 200 *et seq.*; 21 U.S.C. § 371(a).

23.    To accomplish this mandate, the FDA maintains a Center for Drug Evaluation and Research ("CDER"). The CDER oversees the drug companies' development, testing and research, and manufacture of drugs. The staff of approximately 1,800 examines clinical and other testing data generated by drug companies to assess a drug's benefits against its risks and to make an approval decision. In addition to regulating prescription drug advertising generally, the CDER also oversees the Package Inserts that outline benefit and risk information, and monitors marketed drugs for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market. Indeed, under federal law, even claims in promotional labeling or advertising must be consistent with approved labeling. 21 C.F.R. § 202.1(e)(4).

24.    The centrality of federal food and drug law to the allegations at issue in this matter are evidenced by plaintiff's own Complaint, which cites the FDA's oversight of the

highly regulated representations at issue in the case. *See, e.g.*, Am. Compl. ¶ 34 (noting FDA considered the data Merck allegedly included on a document used by its sales representatives when responding to physicians' questions about the cardiovascular safety profile of Vioxx; *id.* ¶¶ 35-36 (noting conclusion of an FDA advisory committee analysis of the VIGOR study, the agency's regulatory response to that analysis, and alleging that Merck improperly responded to the agency's directive); *id.* ¶ 47 (alleging that physicians relied on "false and misleading information from Merck & Company in obtaining the approval of Vioxx").

25.     For this reason too, the Court has substantial federal question jurisdiction over plaintiff's claims. *See In re Zyprexa Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 10355, at *3 (asserting federal question jurisdiction over state-law claims brought by Montana's attorney general in part because "[t]he resolution of Montana's claims necessarily depend[s] on . . . the construction and application of the federal Food, Drug, and Cosmetic Act").

## III.    REMOVAL IS ALSO PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

26.     This case is also subject to removal pursuant to the Class Action Fairness Act ("CAFA").

27.     As set forth below, plaintiff's claims, which he purports to bring in a representative capacity, are the functional equivalent of a putative class action in which:  (1) there are 100 or more members in the plaintiff's proposed class; (2) at least some members of the proposed class have a different citizenship from Merck; and (3) the claims of the proposed class members exceed the sum or value of $5,000,000 in the aggregate.  Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

A.    **Class Action Consisting Of More Than 100 Members**

28.    In his Complaint, plaintiff states that he "brings this action on behalf of himself, the District of Columbia, and the District of Columbia residents who purchased Vioxx." Am. Compl. ¶ 10. He seeks recovery for District residents under D.C. Code § 28-3905. *Id.* ¶ 59.

29.    Plaintiff's Complaint satisfies the definition of a class action under CAFA because it is a civil action brought under a "statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §1332(d)(1)(B); *see also id.* § 1453(a) ("Definitions. . . . In this section, the terms 'class', 'class action', 'class certification order', and 'class member' shall have the meanings given such terms under section 1332(d)(1).").

30.    D.C. Code § 28-3905 is a statute authorizing an action to be brought by a representative person. *See* D.C. Code § 28-3905(k)(1) ("A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia"). Congress intended such actions to be removable to federal court under the provisions of CAFA even if they are not labeled "class actions" by the named plaintiff. S. Rep. 109-14, at 35 (2005) ("[T]he definition of 'class action' is to be interpreted liberally [and] should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff. . . . Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purposes of applying these provisions.")

31.    Plaintiff further asserts that "consumers in the District of Columbia expended millions of dollars purchasing Vioxx prescriptions[.]" Am. Compl. ¶ 58.

32.    Based on these and other allegations, the number of individuals that plaintiff purports to represent is greater than 100 for purposes of 28 U.S.C. § 1332(d)(5)(B).

**B.    Diversity Of Citizenship**

33.    Plaintiff alleges that he is a resident of the District of Columbia. Am. Compl. ¶ 2. Plaintiff does not allege any alternative state of residence. Accordingly, upon information and belief, the District of Columbia is where plaintiff is domiciled and, therefore, the state of which plaintiff is a citizen for purposes of determining diversity.

34.    Merck is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, White House Station, New Jersey, and therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

35.    Thus, at least one proposed class member and one defendant are diverse. *See* 28 U.S.C. § 1332(d)(2)(A) (defining diversity of citizenship under CAFA as including situations where "any member of a class of plaintiffs is a citizen of a state different from any defendant").

**C.    The Amount-In-Controversy Requirement Is Satisfied.**

36.    The claims of the individual class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See id.* § 1332(d)(6). Under this standard, plaintiff's claims easily meet the jurisdictional threshold.

37.    Based on his allegations that Merck misrepresented the risks of Vioxx, plaintiff seeks to recover treble damages (measured as "3 times the total value of sales of Vioxx in the District of Columbia") or $1,500 for each sale to a District of Columbia consumer, plus attorneys' fees and punitive damages. Am. Compl. ¶ 59.

38.    Plaintiff alleges that consumers in the District of Columbia "expended millions of dollars purchasing Vioxx prescriptions[.]" *Id.* ¶ 58. Even assuming that the "millions of dollars" amount to just two million, the amount in controversy would be at least $6,000,000, exceeding the amount-in-controversy requirement. *See Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) ("[A]ssuming that 250,000 strollers were sold in California for $20.00 each, the court concludes that defendants have established by a preponderance of the evidence that compensatory damages likely would exceed $5,000,000."); *Fiore v. First Am. Title Ins. Co.*, No. 05-CV-474-DRH, 2005 WL 3434074, at *3 (S.D. Ill. Dec. 13, 2005) (concluding aggregate amount in controversy under CAFA satisfied where class consisted of over 8 million members; if each class member's claim averaged less than a dollar, "the jurisdictional threshold would be surpassed").

39.    Accordingly, CAFA's amount-in-controversy requirement is satisfied in this case.

40.    For this reason too, the Court has jurisdiction over plaintiff's claims.

WHEREFORE, Merck respectfully removes this action from the Superior Court for the District of Columbia, to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446 and 1453.

WILLIAMS & CONNOLLY LLP


By: *Katherine Leong*
           Douglas R. Marvin
           (D.C. Bar No. 933671)
           Paul K. Dueffert
           (D.C. Bar No. 435452)
           Katherine Leong
           (D.C. Bar No. 492457)

725 12th Street, N.W.
Washington, D.C.  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Defendant Merck & Co., Inc.*

Dated:  July 7, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of July, 2008, a true copy of the foregoing Notice of Removal was served by U.S. first-class mail, postage prepaid to:

H. Vincent McKnight, Jr., Esq.
ASHCRAFT & GEREL, LLP
2000 L Street, NW
Suite 400
Washington, DC  20036

*Katherine Leong*
Katherine Leong

# Exhibit A

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**

06/16/2008

CT Log Number 513518024

**RECEIVED**

JUN 17 2008

**TO:**  Debra A Bollwage, Assistant Secretary
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ 08889-0100

**RE:**   **Process Served in District of Columbia**

**FOR:**  Merck and Company, Incorporated (Domestic State: DE)
*According to our records representation services for this entity have been discontinued in this jurisdiction.*

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | District of Columbia, etc., et al. Pltfs. vs. Merck & Company, Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Re-Issue Summons, Amended Complaint, Certificate of Service |
| **COURT/AGENCY:** | Superior Court - Civil Division, DC Case # 2005-006143 |
| **NATURE OF ACTION:** | Product Liability Litigation - Drug Litigation - VIOXX (rofecoxib) |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/16/2008 postmarked on 06/12/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | H. Vincent McKnight, Jr. Ashcraft & Gerel, LLP 2000 L Street, N.W. Suite 400 Washington, DC 20036 202-783-6400 |
| **REMARKS:** | Please note corporate indicator discrepancy |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight , 798462094560 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Mark Diffenbaugh |
| **ADDRESS:** | 1015 15th Street, N.W. Suite 1000 Washington, DC 20005 |
| **TELEPHONE:** | 202-572-3133 |

Page 1 of 1 / MH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
**500 Indiana Avenue, N.W., Room JM-170**
**Washington, D.C. 20001 Telephone: 879-1133**

DISTRICT OF COLUMBIA, EX REL.
KENNETH WALKER
1301 Belmont St., N.W., #7
Washington, D.C. 20009

*Plaintiff*

VS.

Civil Action No. _____

MERCK & COMPANY
One Merck Drive
Whitehouse Station, NJ 08889    *Defendant*

Serve: Registered Agent
        C.T. Corporation Systems
        1015 15th St., N.W., #1000    RE ISSUE
        Washington, D.C. 20005    **SUMMONS**

To the above named Defendant:  MERCK & COMPANY

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below.   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

ASHCRAFT & GEREL, LLP

_____
E. Vincent McKnight, Esq. #293811
**Name of Plaintiff's Attorney**

2000 L St., N.W., Suite 400
**Address**
Washington, D.C. 20036

(202) 783-6400
**Telephone**

*Clerk of the Court*

By _____
                                   *Deputy Clerk*

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

**NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**

CV(6)-456/May 03

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

DISTRICT OF COLUMBIA  ex rel    )

KENNETH WALKER                  )
1301 Belmont Street, N. W., #7   )
WASHINGTON, DC 20009            )
                                )
BRINGING THIS ACTION ON         )    COMPLAINT FOR
BEHALF OF THE DISTRICT          )
OF COLUMBIA                     )    DISTRICT OF COLUMBIA FALSE
                                )     CLAIMS ACT
c/o Robert J. Spagnoletti       )
Attorney General, DC            )    FILED UNDER SEAL
1350 Pennsylvania Avenue, N.W.  )
Washington, D.C. 20004          )
                                )    JURY TRIAL DEMAND
          Plaintiffs,           )
                                )    Civil Action No.: 2005 CABSLD 006143
     v.                         )
                                )
MERCK & COMPANY                 )
One Merck Drive                 )
Whitehouse Station, NJ 08889    )
                                )
Serve:                          )
     Registered Agent           )
     C.T. Corporation Systems   )
     1015 15th Street, N. W.,    )
      Suite 1000                )
     Washington, D. C.  20005    )
                                )
          Defendant.            )
_____ )

RECEIVED
JUN 1 7 2008
LEGAL RECORDS

LAW OFFICES
CRAFT & GEREL, LLP

SUITE 400
2000 L STREET, N.W.
WASHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
4900 SEMINARY ROAD
ALEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
11300 ROCKVILLE PIKE
ROCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
101 GARDEN CITY DRIVE
LANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
EAST BALTIMORE STREET
BALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

## AMENDED COMPLAINT

1.     This is an action to recover damages and civil penalties on behalf of the

District of Columbia arising from the false claims made by the Merck & Company in

violation of the  False Claims Act, DC Code Section 2-308.14, et. seq. and the Consumer

Protection Procedures Act, D.C. Code Section 28-3904(e) and (f). This court has jurisdiction over the subject matter of this action pursuant to DC Code 11-921 (1981).

2.      Plaintiff Mr. Kenneth Walker is a resident of the District of Columbia and a Medicaid beneficiary, who purchased the prescription drug, Vioxx.

3.      Defendant, Merck & Company, is an American pharmaceutical company incorporated under the laws of the State of New Jersey with its principal place of business at One MERCK Drive, P. O. Box 100, Whitehouse Station, New Jersey. Defendant was in the business of profiting from the design, manufacture, marketing, distribution and/or sales of the brand-name prescription drug VIOXX (rofecoxib).

4.      The False Claims Act, was enacted by the City Council to enhance the Government's ability to recover losses sustained as a result of fraud against the District of Columbia.

5.      The False Claims Act provides that any person who knowingly submits, and/or causes another to submit, a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of up to $10,000 for each such claim, plus three times the amount of the damages sustained by the Government, and attorneys' fees. The Act allows any person having information regarding a false or fraudulent claim against the Government to bring a private cause of action for himself and on behalf of the Government and to share in any recovery. The complaint is to be filed under seal for 180 days (without service on the defendant during such 180-day

LAW OFFICES
CRAFT & GEREL, LLP
SUITE 400
2000 L STREET, N.W.
WASHINGTON, D.C. 20036

202-783-6400
FAX. 202-416-6392

SUITE 650
900 SEMINARY ROAD
ALEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
11300 ROCKVILLE PIKE
ROCKVILLE, MD 20852

301-770-3737
FAX: 301-881-6132

SUITE 301
METRO 400 BUILDING
101 GARDEN CITY DRIVE
LANOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
EAST BALTIMORE STREET
BALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

2

period) to enable the Government (a) to conduct its own investigation without the defendant's knowledge and (b) to determine whether to join the action.

6.    Based on these provisions, Relator seeks to recover damages and civil penalties arising from Defendant's presentation of false claims to the District of Columbia Government.

7.    Under the Consumer Protection Procedures, D.C. Code Section 28-3904, the City Council set forth a list of prohibited activities that merchants were required to avoid in their dealings with consumers in the District of Columbia.

8.    Under the Consumer Protection Procedures, the terms "consumer", and "merchant" are broadly defined at D.C. Code Section 28-3901(a) (2) and (a) (3) respectively.

9.    Defendant, Merck & Company, is a merchant, defined in the Consumer Protection Procedures, that sold the prescription drug, Vioxx, to District of Columbia residents, including the plaintiff.  The District of Columbia, the plaintiff, and other residents of the District of Columbia, who purchased Vioxx, qualify as consumers under the Consumer Protection Procedures.

10.    Plaintiff brings this action on behalf of himself, the District of Columbia, and the District of Columbia residents who purchased Vioxx.  He alleges that Defendant, Merck & Company, committed unlawful trade practices in connection with marketing and selling Vioxx to consumers in the District of Columbia in violation of D.C. Code Section 28-3904(e) and (f)

LAW OFFICES
CRAFT & GEREL, LLP
SUITE 400
1000 L STREET, N.W.
SHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
1300 ROCKVILLE PIKE
OCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
21 GARDEN CITY DRIVE
ANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
AST BALTIMORE STREET
ALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

3

## BACKGROUND

11.    Kenneth Walker, a resident of the District of Columbia, has been a Medicaid beneficiary on and off for the last several years.

12.    In approximately 2001, Dr. Paul A. Manner, GWU Medical Faculty Associates, 2150 Pennsylvania Avenue, NW, Washington, DC, was treating Mr. Walker for complaints of pain in his knee and was considering performing a total knee replacement.

13.    As Dr. Manner evaluated Mr. Walker, he prescribed Vioxx for him to take to relieve his pain.

14.    Mr. Walker usually filled his prescriptions at Morton Care Pharmacy, 724 E. Capitol Street, NE, Washington, DC. When Mr. Walker presented his prescription for Vioxx, the pharmacist told him that the prescription for Vioxx would have to be approved by Medicaid before the pharmacist could give him the drug. The pharmacist told him to return the next day.

15.    The following day, Mr. Walker obtained Vioxx from the pharmacist after approval by DC Medicaid. He continued to take Vioxx through October, 2004. In this period, DC Medicaid paid for his prescription most of the time when he submitted it for refill. However, there were occasions when Mr. Walker paid for the refill out of his own funds.

16.    Prior to taking Vioxx, Mr. Walker had a medical history of diabetes, high blood pressure, and coronary problems.

LAW OFFICES
CRAFT & GEREL, LLP

SUITE 400
1000 L STREET, N.W.
WASHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
ALEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
11300 ROCKVILLE PIKE
ROCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
701 GARDEN CITY DRIVE
LANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
EAST BALTIMORE STREET
BALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

4

17.    While he was taking Vioxx, he suffered a stroke and renal failure. No one warned him of any problems that may have been associated with taking Vioxx.

18.    In October, 2004, he attempted to get his prescription for Vioxx refilled and the pharmacist advised him that the manufacturer had recalled the drug.

7.    Upon hearing this, Mr. Walker contacted his Family Physician, Dr. Sadona, and the Perry Family Clinic, who confirmed that Vioxx had indeed been recalled. Still needing medication for his knee, Dr. Sadona prescribed a combination of Tylenol and Indocin to control his knee pain.

20.    The DC Medicaid program has a preference for generic drugs and will not pay for a non-generic prescription unless the physician obtains prior authorization from Medicaid. Vioxx is a non-generic, brand name prescription drug.

21.    When a Medicaid patient submits a non-generic drug prescription to a pharmacist, and the pharmacist enters the drug into the computer, it elicits an error code, denying the authority to dispense the drug, until the doctor obtains authorization from the Pharmacy Benefit Manager for the District of Columbia, First Health Services.

22.    At page 14 of the First Health Services Pharmacy Provider Manual for the District of Columbia Medicaid Program, it notes that "D.C. Medicaid policy requires mandatory generic substitution when there is an AB-rated generic equivalent . . . . If the prescriber has mandated brand noting 'Brand Medically Necessary' on the prescription, the pharmacist or prescriber should call First Health Services Clinical call center . . . for consideration of a prior authorization."

LAW OFFICES
CRAFT & GEREL, LLP
SUITE 400
2000 L STREET, N.W.
.SHINGTON, D.C. 20036

202-783-6400
FAX: 202-416-6392

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
JNE CENTRAL PLAZA
1300 ROCKVILLE PIKE
OCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
31 GARDEN CITY DRIVE
ANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
AST BALTIMORE STREET
ALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

5

23.    At page 17, the Manual again reiterates that prior authorization is required for Brand Name drugs or non-generic drugs.

24.    The prior authorization approval is not automatic, the Manual notes that, "[u]pon a call from the prescriber, First Health Services will work with the prescriber to determine the outcome of the prior authorization request. Often, a change will be made to the drug. In some cases the requested drug may be authorized, or in some cases, the requested drug may be denied." *Id.* at page 18.

25.    In addition, the prescribing physician is required to fill out a Medwatch form indicating that he has tried two generic regimens that have failed before he can get authorization to prescribe a brand name drug that will be paid for by D.C. Medicaid.

26.    Under the procedures to obtain approval, the prescribing physician must make statements that convince First Health Services that the brand name is medically necessary, superior to the generic alternatives, and he must fill out a Medwatch form.

27.    This procedure was followed in Mr. Walker's case as indicated in paragraphs 11 to 15 above. Dr. Manner's medical records indicate that D.C. Medicaid approved Mr. Walker's Vioxx prescription on July 29, 2002. The note further indicates that Dr. Manner advised D.C. Medicaid that DayPro and Lodine had not been effective in the past.

28.    Defendant Merck & Company withdrew Vioxx from the market on September 30, 2004 after announcing that, in a study, patients using Vioxx had experienced significantly more heart attacks and strokes than patients taking a placebo.

LAW OFFICES
CRAFT & GEREL, LLP

SUITE 400
000 L STREET, N.W.
SHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
1300 ROCKVILLE PIKE
OCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
01 GARDEN CITY DRIVE
ANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
AST BALTIMORE STREET
ALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

29.    However, prior to this announcement, Defendant Merck & Company, was aware of significant cardiovascular risks associated with the use of Vioxx and yet, in an aggressive and intentional sales blitz, obfuscated the risks and encouraged physicians and medical providers to prescribe Vioxx.

30.    A highly trained Merck & Company sales force met face to face with medical providers and provided them with inaccurate and misleading information to encourage them to prescribe Vioxx to their patients.

31.    Merck & Company assigned 3,000 highly trained company representatives across the United States, including the District of Columbia, to communicate face-to-face with medical providers about Vioxx.

32.    A clinical trial known as Vioxx Gastrointestinal Outcomes Research was released on March 27, 2000 and published in The New England Journal of Medicine on November 23, 2000. The study compared patients using Vioxx with patients using Naprosyn. It revealed that the Vioxx patients were five (5) times more likely to suffer a heart attack than the patients using Naprosyn.

33.    As medical providers began to ask questions about these results, Merck & Company directed its representatives to use the "Cardiovascular Card" to respond. This Cardiovascular Card contained unscientific data that suggested that patients on Vioxx were 11 times _less_ likely to die than patients on other medications, and 8 time _less_ _likely_ to die from heart attacks and strokes.

34.    The Cardiovascular Card did not mention or discuss the VIGOR Study

LAW OFFICES
CRAFT & GEREL, LLP

SUITE 400
000 L STREET, N.W.
SHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
JNE CENTRAL PLAZA
1300 ROCKVILLE PIKE
OCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
31 GARDEN CITY DRIVE
ANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
AST BALTIMORE STREET
ALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

7

and the FDA considered the data on the Card as insufficient to make a safety analysis.

35.    In February, 2001, an FDA Arthritis Advisory Committee concluded that the drug presented significant health risks and that doctors should be warned about the VIGOR Study.

36.    In response to the FDA committee, Merck & Company issued a bulletin to its company representatives forbidding them from discussing the VIGOR Study or the FDC committee findings and, again, encouraged them to respond to questions about Vioxx using the unscientific Cardiovascular Card.

37.    On May 22, 2001, an article appeared in the New York Times questioning the safety of Vioxx. Merck & Company again forbade its representatives from discussing the article or the VIGOR Study, and instructed its representative to continue to use the Cardiovascular Card in responding to questions from medical providers about Vioxx.

38.    Through this effort, Merck & Company caused medical providers in the District of Columbia to prescribe Vioxx to Medicaid patients, whose prescriptions were being paid for in whole or in part, by the District of Columbia, when, in fact, generic drugs would have been safer.

39.    Through this effort, Merck & Company caused Pharmacy Benefit Managers, charged with approving the use of non-generic drugs to continue to approve prescriptions for Vioxx for DC Medicaid patients, whose prescriptions were being paid

LAW OFFICES
CRAFT & GEREL, LLP
SUITE 400
1000 L STREET, N.W.
SHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
1300 ROCKVILLE PIKE
ROCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
01 GARDEN CITY DRIVE
HANOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
AST BALTIMORE STREET
ALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

8

for, in whole or in part, by the District of Columbia, when, in fact, generic drugs would have been safer.

40.    Through this effort, Merck & Company provided medical providers in the District of Columbia with misleading and unscientific studies that served as the basis for the physicians to prescribe Vioxx and to fill out the authorizing forms for DC Medicaid patients, like Mr. Walker, to obtain Vioxx over available generic drugs.

41.    From 1999 through 2004, 7177 Vioxx prescriptions were prescribed and paid for by DC Medicaid.  In this period, DC Medicaid paid $724,046.88 for Vioxx prescriptions.

42.    But for the intentionally false and misleading campaign of Defendant Merck & Company, these prescriptions would not have been prescribed, and/or approved and paid for by DC Medicaid.

## Count I
## (Violation of DC Code Section 2-308.14 (a)(2))

43.    Paragraphs 1 through 42 are hereinafter realleged and incorporated by reference.

44.    Under DC Code Section 2-308.14(a)(2) it is unlawful for any person to knowingly make, use, or caused to be made or used a false record or statement to get a false claim paid or approved by the District of Columbia.

45.    As indicated above, the DC Medicaid program has a preference for generic drugs when available.  Non-generic drugs, like Vioxx, will not be paid for unless the

LAW OFFICES
CRAFT & GEREL, LLP

SUITE 400
2000 L STREET, N.W.
SHINGTON, D.C. 20036

202-783-6400
FAX 202-416-8392

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
1300 ROCKVILLE PIKE
ROCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
01 GARDEN CITY DRIVE
LANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
EAST BALTIMORE STREET
BALTIMORE, MD 21202

410-539-1122
FAX 410-547-1281

prescribing doctor justifies that the non-generic drug is safer and more effective than the generic alternative.

46.    The prescribing doctor must present his justification that the non-generic drug is safer and more effective than the generic alternative.

47.    In the case of Vioxx, the doctors, who prescribed the drug for Mr. Walker and other DC Medicaid patients, relied upon false and misleading information from Merck & Company in obtaining the approval of Vioxx for use with DC Medicaid patients. The medical providers stated that Vioxx was safer and/or more effective than available generic alternatives.

48.    Defendant, Merck & Company, by providing the physicians and Pharmacy Benefit Managers, with false and misleading information, knowingly caused the physicians and Pharmacy Benefit Managers to generate false records and statements to get prescription claims for Vioxx paid for by the District of Columbia Medicaid program.

49.    Defendant Merck & Company, by its conduct, as described above, caused the District of Columbia to spend $724,046.88 to pay for Vioxx prescriptions for DC Medicaid patients like Mr. Walker between 1999 and 2004.  Pursuant to DC Code Section 2-308.14 (a), Defendant Merck & Company are liable for three times this amount as a penalty.  Defendant Merck & Company is liable for $2,172,140.64 in consequential damages.

LAW OFFICES
CRAFT & GEREL, LLP
SUITE 400
1000 L STREET, N.W.
SHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5900
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
1300 ROCKVILLE PIKE
OCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
01 GARDEN CITY DRIVE
LANDOVER, MD 20785

301-459-8400
FAX 301-459-1384

SUITE 1212
AST BALTIMORE STREET
IALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

50.    Defendant Merck & Company, by its conduct, as described above, caused the District of Columbia to pay for 7,177 Vioxx prescriptions between 1999 and 2004. DC Code Section 2-308.14 (a) penalizes each false claim with a penalty between $5,000.00 and $10,000.00. Defendant Merck & Company is liable for statutory penalties in an amount between $35,885,000.00 and $71,770,000.00.

Wherefore, Plaintiff Kenneth Walker, on behalf of himself as a Medicaid patient, and the District of Columbia, urges this court to enter judgment against Defendant Merck & Company and to award consequential and statutory damages as indicated in DC Code Section 2-308.14 (a) plus attorney's fees and costs associated with the prosecution of this action.

## Count II
### (Consumer Protection Procedures)

51.    Paragraphs 1 through 50 are hereinafter realleged and incorporated by reference.

52.    By intentionally misrepresenting the risks associated with the use of Vioxx, agents and employees of Defendant Merck & Company encouraged medical providers in the District of Columbia to prescribe Vioxx to consumers in the District of Columbia, like Mr. Walker, who purchased the prescription drug, Vioxx, with personal funds, payments from private insurance carriers, and payments from the District of Columbia.

53.    Pursuant to D.C. Code Section 28-3904(e), it is an unlawful trade

LAW OFFICES
CRAFT & GEREL, LLP

SUITE 400
1000 L STREET, N.W.
WASHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
ALEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
11300 ROCKVILLE PIKE
ROCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
101 GARDEN CITY DRIVE
LANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
EAST BALTIMORE STREET
BALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

11

practice for a merchant to "misrepresent as to a material fact which has a tendency to mislead."

54.    Defendant Merck & Companyy, by its conduct, in intentionally obfuscating the risks and dangers associated with use of Vioxx, misled medical providers and consumers in the District of Columbia when there were safer and more effective alternatives that did not pose these risks, and, by its conduct, Defendant Merck & Company violated D.C. Code Section 28-3904(e).

55.    Pursuant to D.C. Code Section 28-3904(f), it is an unlawful business practice for a merchant to "fail to state a material fact if such failure tends to mislead."

56.    Defendant Merck & Company, by its conduct, failed to state a material fact when its agents purposely did not reveal and/or discuss studies that demonstrated increase cardiovascular risks associated with the use of Vioxx when it marketed the drug to medical providers and consumers in the District of Columbia.

57.    Defendant Merck & Company, by its conduct, violated D.C. Code Section 28-3904(f) when it misled medical providers and consumers in the District of Columbia about the increased risks associated with the use of Vioxx.

58.    As a result of Defendant Merck & Company's conduct as described above, consumers in the District of Columbia expended millions of dollars purchasing Vioxx prescriptions and some of these consumers experienced strokes, heart attacks and renal failure.

59.    As a result of Defendant Merck & Company's unfair trade practices,

LAW OFFICES
CRAFT & GEREL, LLP
SUITE 400
000 L STREET, N.W.
SHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6792

SUITE 650
900 SEMINARY ROAD
LEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
INE CENTRAL PLAZA
1300 ROCKVILLE PIKE
OCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
01 GARDEN CITY DRIVE
ANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
AST BALTIMORE STREET
ALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

12

consumers of the District of Columbia are entitled to treble damages (3 times the total value of sales of Vioxx in the District of Columbia) or $1,500.00 for each sale, whichever is greater, plus attorneys fees and punitive damages.

Wherefore, Plaintiff Kenneth Walker, urges this court to enter judgment against Defendant Merck & Company and to award compensatory damages, punitive damages, and attorney's fees as permitted under D.C. Code Section 28-3905(k)(l).

RESPECTFULLY SUBMITTED,

ASHCRAFT & GEREL, LLP

By: _H. Vincent McKnight_

H. Vincent McKnight, Jr.
D.C. Bar No. 293811
2000 L Street, N. W., Suite 400
Washington, D. C.  20036
(202) 783-6400
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Complaint was hand-delivered, this ___15___ day of August, 2005, to:

Robert J. Stagnoletti, Esquire
Attorney General
District of Columbia
1350 Pennsylvania Avenue, N. W.
Washington, D. C.  20004

_H. Vincent McKnight_
H. Vincent McKnight, Jr.

LAW OFFICES
ASHCRAFT & GEREL, LLP
SUITE 400
2000 L STREET, N.W.
WASHINGTON, D.C. 20036

202-783-6400
FAX 202-416-6392

SUITE 650
900 SEMINARY ROAD
ALEXANDRIA, VA 22311

703-931-5500
FAX 703-820-0630

SUITE 1002
ONE CENTRAL PLAZA
1300 ROCKVILLE PIKE
ROCKVILLE, MD 20852

301-770-3737
FAX 301-881-6132

SUITE 301
METRO 400 BUILDING
301 GARDEN CITY DRIVE
LANDOVER, MD 20785

301-459-8400
FAX 301-459-1364

SUITE 1212
EAST BALTIMORE STREET
BALTIMORE, MD 21202

410-539-1122
FAX 410-547-1261

13

JS-44
(Rev.1/05 DC)

$\frac{E}{08} - 1176$
PLF

**I (a) PLAINTIFFS**

District of Columbia ex rel. Kenneth Walker

11001

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   11001
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

H. Vincent McKnight, Jr.
Ashcraft & Gerel, LLP
2000 L Street, NW, Suite 400
Washington, DC 20036

**DEFENDANTS**

Merck & Company   88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**   88888
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

Case: 1:08-cv-01176
Assigned To : Friedman, Paul L.
Assign. Date : 7/7/2008
Description: General Civil

*ACTIO*

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government   ⊗ 3 Federal Question
   Plaintiff   (U.S Government Not a Party)

○ 2 U.S. Government   ○ 4 Diversity
   Defendant   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**○ A. *Antitrust***

☐ 410 Antitrust

**○ B. *Personal Injury/ Malpractice***

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. *Administrative Agency Review***

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. *Temporary Restraining Order/Preliminary Injunction***

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**◎ E. *General Civil (Other)***     **OR**     **○ F. *Pro Se General Civil***

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

- ○ -

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

O 1 Original Proceeding  ⊙ 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. ss 1331, 1332, 1441, 1446, 1453 - removal from state court

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ unspecified  Check YES only if demanded in complaint  JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form

DATE 7/7/08    SIGNATURE OF ATTORNEY OF RECORD  *Katherine Leong*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_KENNETH WALKER_____
Plaintiff

  v.

_Merck + Company_____
Defendant

Civil Action No.   **08 1176**

**JUL 0 7 2008**

  The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **FRIEDMAN, J. PLF** All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

  Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

  Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

    NANCY MAYER-WHITTINGTON, CLERK

    By_Maureen Higgins_____
     Deputy Clerk

cc: _H. Vincent McKnight_

       929A
       Rev. 7/02